## THE GOLDEN ROD.

(District Court, S. D. New York. March 29, 1906.)

MARITIME LIENS—COAL SUPPLIES—AGREEMENT FOR LIEN.

A steam yacht was delivered by her owner to another in her home port, under an agreement for her purchase, but was subsequently retaken by the owner because of the purchaser's default. The purchaser, while in possession, placed an agent on board with authority to look after supplies, and such agent contracted with libelant for supplying her with coal, stating at the time that the yacht was "good for her bills." and certain coal was supplied thereunder and charged to the vessel. *Held*, that the representation of the agent was within his authority, as well as that of his principal, and created a maritime lien on the vessel.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Maritime Liens, § 48.]

In Admiralty.

Wing, Putnam & Burlingham, for libellant.
Wilcox & Green, for claimant.

ADAMS, District Judge. This action was brought by the Commercial Coal Company against the Steam Yacht Golden Rod, to recover for certain supplies of coal furnished to her in May and June, 1905, amounting to $296.13. The defence is that the supplies were not furnished upon the credit of the yacht.

It appears that the yacht at the time was owned by Archibald Watt, who made a written agreement with Florence E. Durlacher for the sale of the same to her for $22,000 to be paid in 8 installments of $2,500 each and 1 of $2,000. The agreement was dated May 18, 1905, and the periods for the various payments extended through the following March. Prior to this time, she had been in the possession of the American Power and Construction Company, A. Perry Bliven, General Manager, which held her under an agreement with the owner to put certain repairs upon her and sell her so as to net the owner $14,000, anything above that sum to go to the said company, but if for any reason, she should not be sold before May 1, 1903, the company would pay the owner $12,500 for her exclusive of all charges. Possession was taken by the company under this agreement but it became insolvent the latter part of 1903. Bliven, however, continued in possession, claiming that he had succeeded to the company's rights. He made efforts to sell the yacht and continued in possession until May, 1905, when she went into commission again, after the execution of an agreement between Watt and Mrs. Durlacher. This agreement provided that the yacht was not to be owned by the purchaser until the entire purchase money should be paid and the bill of sale should remain in the meantime in escrow in the hands of Bliven. The yacht, however, went into the possession of Mrs. Durlacher, whose husband acted as her agent in the matter, and was used in a sight seeing enterprise. The yacht so remained until July 17th, when Watt resumed possession, because the purchaser had defaulted in her first payment. While the yacht was in Mrs. Durlacher's possession, the coal in question was supplied.

It is testified by the libellant's agent, McCormick, that in May he went aboard of the yacht for the purpose of selling coal and there saw Bliven, whom he had seen there several times during the previous winter, but made no sales. On the occasion in May, he asked a person whom he met on the yacht for the captain and was directed to Bliven. The agent made arrangements with Bliven for the sale of some coal, which he delivered on board and took receipts for. The first, dated May 25th was for 2 tons and signed A. P. Bliven for McCormick; the next, dated the same, was for 3 tons and similarly signed; the next for 10 tons, was dated June 1st, signed by Bliven, Master; the next, for 10 tons, was signed by Albert Starling, Engineer; the next, June 19th, 5 tons, was signed by M. Durlacher, O. Ludlow; the next, June 22d, 21½ tons, was signed by J. F. Durlacher, per A. P. Bliven.

It appears that Bliven although in one instance signed as master, did not in fact occupy that position. At first he was merely a broker and the agent of the owner. When that instrument went out of effect by reason of the insolvency of Bliven's employer, he remained aboard as the agent of the owner of the yacht to protect his interest but not in any sense, as master, or authorized, as far as Watt was concerned, to create liens for supplies required for navigation purposes. When the yacht went into commission, however, the necessity for supplies began and they were ordered by Bliven, who told the agent of the libellant that the yacht was "good for her bills." They were not paid, however, and the libellant having been referred to Mrs. Durlacher's husband, who was her agent in the matter, discontinued the supplies. They were charged to the yacht and subsequently, July 19th, a specification of lien was filed under the state statute. It is contended by the claimant that the specification only applied, if at all, to the supplies furnished subsequent to June 19th, as the limit of 30 days then commenced to run. It is unnecessary, however, to consider the statute, because if, as the libellant contends, there was an agreement for a lien, it is decisive of the case. The question turns on Bliven's authority. It appears that he had none from the owner, Watt, to make a contract binding upon the vessel, but it also appears that Watt turned her over to the purchaser, who entered into an agreement with Bliven, evidenced by the following letter addressed to him:

"June 14, 1905.

Mr. A. Perry Bliven, Brooklyn, N. Y.—Dear Sir: Now that matters in regard to the Golden Rod have been arranged satisfactorily, I appoint you my representative on board Yacht and expect that you will look after my interests the same as if it were myself.

I expect all hands aboard to do their duty and not disregard your orders. I give you full power in this matter. In affairs calling for alterations, repairs other than urgent ones and contracts for supplies please first consult me.

Believing that all aboard will work for the success of the Yacht at all times, I remain

Respectfully,                      Mrs. F. E. Durlacher
                                            by J. F. Durlacher, Atty."

Bliven testified, that prior to this letter, at the time of the first conversation with the libellant's agent concerning the coal, about the

middle of May, the fact of the yacht being about to commence running was mentioned and an arrangement made for a supply of coal. In such arrangement he represented Mrs. Durlacher, who employed and paid him for looking after the supplies and other things. Bliven testified that the yacht was turned over to Mrs. Durlacher on the 23rd of May, and he made an arrangement with the libellant for a supply of coal, in conformity with the vessel's needs, which would be about 30 tons per week. The facts seem to be that Bliven, speaking for Mrs. Durlacher, made a continuing arrangement for a supply of coal equivalent to about 30 tons each week. This seems to be an agreement for a lien covering the coal supplied by the libellant.

The yacht at the time had been transferred by the owner to Mrs Durlacher, under the purchasing agreement which provided, inter alia, for a delivery and for indemnity against liens on the yacht. She was accordingly transferred and was in Mrs. Durlacher's possession when the coal was supplied, although the security given to the owner as indemnity against liens turned out to be of little value. There does not seem to be any doubt that Mrs. Durlacher's contract for a lien would have been valid and it seems to me that the representation of her agent that the yacht was "good for her bills" was within his authority and created an enforcible lien.

Decree for the libellant for $296.13, with interest.